**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE DUFFY and SHAWN DUFFY, <br><br> Plaintiffs, <br><br> v. <br><br> STELLANTIS, <br><br> Defendant. | Civil Action No. 22-06038 (GC) (RLS) <br><br> **MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

This matter comes before the Court upon Defendant FCA US LLC's[1] Motion to Dismiss (ECF No. 7), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Plaintiffs Diane and Shawn Duffy's Complaint (ECF No. 1). Plaintiffs opposed (ECF No. 10), and Defendant replied (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below and for good cause shown, Defendant's Motion is **GRANTED**.

---

[1] Defendant writes that it was incorrectly named as "Stellantis." (ECF No. 7-2 at 1.)

I.  **BACKGROUND**[2]

In a form complaint, Plaintiffs allege the following as their statement of claim:

> The defendant manufactured the vehicle we were leasing. The vehicle presented a life-threatening brake defect. We could not use the vehicle as intended. The defendant banned us from getting the vehicle repaired. We were bullied and gaslit for over two years while trying to get the vehicle repaired. Two Jeep dealerships were able to duplicate the defect before denying further service to the vehicle after both said the defect was repaired. One of the dealerships involved falsified the service order, putting our lives at risk. We can prove everything with irrefutable evidence. This evidence includes, but is not limited to, recorded phone calls with the defendant and videos of the defect occurring. This EPB defect is now under federal investigation by the [National Highway Traffic Safety Administration (NHTSA)].

[(ECF No. 1 at 4 (cleaned up).[3])]

Plaintiffs seek "the money [Plaintiffs] put into the vehicle, which is roughly 20,000 dollars," and "the maximum amount in punitive/exemplary damages." (*Id.* (cleaned up).) Plaintiffs also claim that they "are still suffering the outcome of these events," alleging that their "lives were dramatically changed in a negative and permanent way"; that Mr. Duffy's "PTSD and ASD were significantly affected by these events, requiring therapy, psychiatry, medication, and suicide intervention"; and that Ms. Duffy "was forced to postpone her retirement due to the negative cascade of financial repercussions stemming from these events." (*Id.*)

---

[2]   When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court typically accepts as true all well-pleaded facts in the complaint. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

[3]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

II.  **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

III.  **DISCUSSION**

Defendant asserts two reasons for dismissing Plaintiffs' Complaint: *first*, Plaintiffs cannot maintain a claim for a violation of the National Traffic and Motor Vehicle Safety Act (MVSA); and *second*, to the extent asserted in the Complaint, any claim for negligence is barred by the economic loss rule. (ECF No. 7-2.) The Court will address each argument in turn.

### A. National Traffic and Motor Vehicle Safety Act

Defendant first argues that because "the MVSA does not create a private cause of action," Plaintiffs lack standing to assert their MVSA claim. (ECF No. 7-2 at 2-3.) The Court agrees. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 884 (3d Cir. 2020) (noting that the "[MVSA] preserves common-law causes of action, 49 U.S.C. § 30103(e), but does not confer an express private right of action"); *Burgo v. Volkswagen of Am.*, 183 F. Supp. 2d 683, 688-89 (D.N.J. 2001) (ruling that the MVSA "does not create a private right of enforcement"); *Suddreth v. Mercedes-Benz, LLC*, Civ. No. 10-05130, 2011 WL 5240965, at *6 (D.N.J. Oct. 31, 2011) ("[T]he FMVSA does not provide for a private right of action, and is therefore not intended to create a duty the breach of which would give rise to civil liability." (citing *Burgo*, 183 F. Supp. 2d at 688)); *see also Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000) (holding that "the [Motor Vehicle] Safety Act confers no private cause of action to enforce its notification requirements").

Plaintiff makes no argument in opposition. Accordingly, the Court concludes that Plaintiffs cannot maintain a private cause of action under the MVSA.

### B. Gross Negligence

Defendant next argues that the economic loss doctrine bars Plaintiffs from recovering in tort (here, gross negligence) damages that arise from a breach of a contract. (ECF No. 7-2 at 3-4.)

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 316 (N.J. 2002) (citation omitted); *see Am. Fin. Res., Inc. v. Countrywide Home Loans Servicing, LP*, Civ. No. 12-7141, 2013 WL 6816394, at *8 (D.N.J. Dec. 23, 2013) ("Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract.") (citations omitted).

"The economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract." *Sun Chem. Corp. v. Fike Corp.,* 235 A.3d 145, 150 n.2 (N.J. 2020); *SRC Constr. Corp. of Monroe v. Atl. City Housing Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013) (noting that the economic loss doctrine bars a tort claim where it "is not really a tort claim at all" but instead is "a contract claim in tort claim clothing").

The Court agrees with Defendant that "Plaintiffs appear to allege a contractual dispute over an alleged failure to repair a vehicle and seek money damages as a result." (ECF No. 7-2 at 4.) Although Plaintiffs' allegations sound of various types of possible tort claims, the only tort claim that Plaintiffs specifically assert in their Complaint is "gross negligence." (*See* ECF No. 1 at 4.) However, the only relationship that the Court can glean from the Complaint is contractual in nature — for example, "[D]efendant manufactured the vehicle [Plaintiffs] were leasing"; "[t]wo Jeep dealerships were able to duplicate the defect before denying further service to the vehicle after both said the defect was repaired"; and "[o]ne of the dealerships involved falsified the service order." (*Id.* (cleaned up).) The fact that Plaintiffs seek "the money [Plaintiffs] put into the vehicle" (*id.* (cleaned up)) further demonstrates that Plaintiffs' claims are based in contract. Plaintiffs do not, however, identify any legally imposed independent duty that Defendant owed them. Moreover, the economic loss doctrine also bars Plaintiffs' claims of damages for emotional distress. *See Rivera v. Washington Mut. Bank,* 637 F. Supp. 2d 256, 269 n.24 (D.N.J. 2009) ("[I]t is axiomatic that a plaintiff may not recover for emotional distress caused by a defendants' alleged breach of contract; such a proposition lies at the heart of the economic loss doctrine." (citing Restatement (Second) of Contracts § 353 (1981))).

In their opposition papers, Plaintiffs do not meaningfully respond to Defendant's arguments and, instead, chiefly describe the evidence that they intend to use to prove their claims.

(*See generally* ECF No. 10.) "'[W]here a plaintiff is proceeding *pro se*, courts have construed additional allegations made in 'opposition papers as a motion to amend the complaint, or have granted leave to amend a *pro se* plaintiff's complaint where the plaintiff has introduced new facts in his opposition papers but has not requested leave to amend.'" *Hamza v. United Cont'l Holdings, LLC*, Civ. No. 19-8971, 2020 WL 5757807, at *3 (D.N.J. Sept. 28, 2020) (quoting *Gordon v. Kartri Sales Co.*, Civ. No. 17-00320, 2018 WL 1123704, at *3-4 (M.D. Pa. Mar. 1, 2018) (declining to consider new allegations raised in *pro se* plaintiff's opposition to motion to dismiss but granting leave to amend).

But here, several of Plaintiffs' additional details only confirm the contractual nature of this action. For example, Plaintiffs allege that during the relevant period, "[t]he vehicle was still under lease"; that Defendant denied Plaintiffs "further service on the defective vehicle"; that "Plaintiffs' numbers were blocked from getting through to all customer service lines"; that "Plaintiffs should never have been sold the vehicle in its then current state"; that "Plaintiffs made hundreds of phone calls over a thirteen month period asking/begging for vehicle repair, a vehicle that worked, or at least a loaner vehicle"; and that "[t]his clearly put the [P]laintiffs in a position of being unable to get the vehicle repaired while still being responsible to adhere to the terms of the lease." (ECF No. 10 at 2-3 (cleaned up).) These additional details — which appear to stem from Plaintiffs' vehicle lease — do not change the Court's conclusion.

Because Plaintiffs have alleged no harm other than economic loss that may be recovered under contract or, perhaps, warranty law, Plaintiffs' claim for gross negligence must be dismissed. *See Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 336 (D.N.J. 2010) (noting where

6

plaintiff's "only alleged injury is to his vehicle . . . [tort claims] would be precluded by the economic loss doctrine").[4]

### C. Contract and Warranty Claims

Plaintiffs' *pro se* form complaint lacks the targeted and clear pleading that is expected of pleadings drafted by attorneys. Still, "courts must liberally construe pleadings that are filed *pro se*." *Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson*, 551 U.S. at 94); *see also Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) ("[Courts] will apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002))). But although *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim," *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)), and *pro se* litigants are not exempt from complying with federal pleading standards, *see Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010). As a practical matter, this "means that a pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Brown v. Dep't of Corr., PA*, Civ. No. 05-347, 2006 WL 895039, at *2 (W.D. Pa. Mar. 29, 2006) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

Courts outside of this Circuit have also made clear that the less stringent pleading standard requires a court to look more holistically at the pleadings to determine whether a plaintiff

---

[4] In *Noble*, the Court also noted that "New Jersey law contains no 'sudden and calamitous' exception to the economic loss doctrine." 694 F. Supp. 2d at 336 (citations omitted).

proceeding *pro se* could theoretically prevail on his or her claims. *See, e.g., United States v. $9,020.00 In U.S. Currency*, 30 F. App'x 855, 858 (10th Cir. 2002) ("This court has stated that liberal construction of pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.") (internal quotation marks omitted); *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012) (basing dismissal of *pro se* complaint on complaint lacking "any suggestion of a cause of action" rather than complaint's poor styling).

Applying the more liberal standard here, the Court construes Plaintiffs' Complaint as including at least claims for breach of contract and breach of the implied warranty of merchantability.[5]

1. <u>Breach of Contract</u>

Under New Jersey law, a plaintiff must plead the following elements for a valid breach-of-contract claim: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Hibbert v. Bellmawr Park Mut. Hous. Corp.*, 628 F. App'x 132, 134-35 (3d Cir. 2015) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).

Liberally construed, the pleadings include each of these elements. Plaintiffs allege that there was a vehicle-lease relationship; that unrepaired, "life-threatening" defects kept Plaintiffs

---

[5] Plaintiffs' allegations also sound of claims under product-liability or consumer-protection statutes. Absent a clearer indication of Plaintiffs' intent to assert such claims, the Court will refrain from reading them into the pleadings. *C.f. Beasley*, 623 F. Supp. 3d at 440 (construing complaint "as trying to state a claim under" Lanham Act provision where plaintiff wrote "Lanham Act" and language that mirrored statute's title).

8

from using the vehicle as intended; that, as a result, Plaintiffs spent "roughly 20,000 dollars"; and that Plaintiff continued making payments. (*See* ECF No. 1 at 4; ECF No. 10 at 2-3.) Defendant, although not admitting that a contract exists, seems to contend that Plaintiffs have at least described a breach-of-contract claim. (*See* ECF No. 7-2 at 4 ("[A] dispute, like here, arising out of contract must be resolved pursuant to contract law."); ECF No. 11 at 4 ("While not specifically referenced in the Complaint, the relationship between Plaintiffs and Defendant is contractual in nature, if it exists at all.").) Thus, under the less stringent standard for *pro se* litigants, Plaintiffs have pled a plausible claim for breach of contract.[6]

### 2. Breach of Implied Warranty of Merchantability

Under New Jersey law, an implied warranty of merchantability arises in every sale involving goods. *Alin v. Am. Honda Motor Co.*, Civ. No. 08-4825, 2010 WL 1372308, at *12 (D.N.J. Mar. 31, 2010) (citing *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (N.J. 1960)). The term merchantability means that a product "satisf[ies] a minimum level of quality," *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, Civ. No. 96-1814, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997), or that it is "reasonably fit for the general purpose for which it is manufactured and sold," *Henningsen*, 161 A.2d at 76. The "general purpose" of a passenger vehicle is "providing transportation for its owner." *Sheris v. Nissan N. Am. Inc.*, Civ. No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (quoting *In re Ford Motor Co.*, 2001 WL 1266317, at *22).

Plaintiffs' allegation that the vehicle had a "life-threatening brake defect" could be construed as rendering the vehicle unfit for its ordinary purpose of providing transportation for

---

[6] Defendant invoked the economic loss doctrine to argue successfully that Plaintiffs could not assert a tort claim to recover breach-of-contract damages (*see* ECF No. 7-2 at 3-4; ECF No. 11 at 3-4) but did not address whether Plaintiffs stated a viable claim for breach of contract.

Plaintiffs. (ECF No. 1 at 4.) As a result, Plaintiffs plead a plausible claim for breach of the implied warranty of merchantability.

    3. <u>Subject-Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction, and when there is a question [about] our authority to hear a dispute, 'it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.'" *Est. of Tomei by Flandreau v. H&H Mfg. Co.*, 799 F. App'x 143, 143 (3d Cir. 2020) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)). And "a federal court always has jurisdiction to determine its jurisdiction," even if a defect exists that would otherwise strip any federal court of subject-matter jurisdiction over a case. *See id.* Plaintiffs alleged that the Court has subject-matter jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at 3.) In addition to the complete-diversity requirement, section 1332 also requires that the amount "in controversy exceeds the sum or value of $75,000."

But as presently stated, Plaintiffs' claims allow recovery of only economic damages, and the only economic damages that Plaintiffs mention in the Complaint are "roughly 20,000 dollars" for "the money [Plaintiffs] put into the vehicle." (ECF No. 1 at 4.) As a result, this Court lacks subject-matter jurisdiction under section 1332, because Plaintiffs did not allege that the amount in controversy exceeds $75,000 or assert claims that allow an award of damages that could exceed $75,000. *See, e.g.*, N.J. Stat. Ann. § 56:8-19 (allowing award of treble damages, reasonable attorneys' fees, filing fees, and reasonable costs of suit); *see Tidman v. Eminence Hardscapes, LLC*, Civ. No. 22-5441, 2023 WL 3224594, at *3 (D.N.J. May 3, 2023) (counting potential treble damages toward amount-in-controversy requirement).

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED**. Plaintiffs' Complaint (ECF No. 1) is **DISMISSED** without prejudice. An appropriate Order follows.

Dated: July 17, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**